UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Thomas James Erickson,

                    Plaintiff,

vs.

Koochiching County, Koochiching
County Sheriff Department,
Koochiching County Attorney
Jennifer Hasbargen, Duane Nelson,
John DeMuth, John Mastin, Gary
Jensen, Peter Kalar, Florence Hervey,
Kim Millette, Mary Lou Jensen,
Lynn Rogers, Barb Paulbeck, Scott
Wherely, Dennis Hummitzsch, Susan
Tindal, Paul Reuvers, Iverson Reuvers
LLC, Charles LeDuc, Bruce Biggins,
and John and Jane Does 1-5,

                    Defendants.        Civ. No. 05-716 (JRT/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to a special assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Motion of the Defendant Bruce Biggins ("Biggins")

for Judgment on the Pleadings; the Motion of the Defendant Charles LeDuc ("LeDuc")

to Dismiss; and the Motion of the Defendants Koochiching County, Koochiching

County Sheriff's Department ("Sheriff's Department"), Koochiching County Attorney

Jennifer Hasbargen ("Hasbargen"), Duane Nelson ("Nelson"), John DeMuth

("DeMuth"), John Mastin ("Mastin"), Gary Jensen, Peter Kalar ("Kalar"), Florence

Hervey ("Hervey"), Kim Millette ("Millette"), Mary Lou Jensen, Lynn Rogers

("Rogers"), Barb Paulbeck ("Paulbeck"), Scott Wherely ("Wherely"), Dennis

Hummitzsch ("Hummitzsch"), Susan Tindal ("Tindal"), Paul Reuvers ("Reuvers"),

and Iverson Reuvers LLC (collectively, the "County Defendants"), to Dismiss or, in

the alternative, for Summary Judgment.

A Hearing on the Motions was conducted on September 29, 2005, at which

time, LeDuc and Biggins[1] appeared by John S. Garry, Assistant Minnesota Attorney

---

[1]The Record reflects that Biggins is a private attorney, who is employed as a part-time Public Defender for the State of Minnesota.  See, Biggins' Answer to Complaint, Docket No. 10, at ¶9.  As a State official, Biggins is entitled to representation from the Minnesota Attorney General, in his capacity as a Public Defender.  See, Agnew v. Campbell, 1990 WL 188723 at *2 (Minn. App., December 4, 1990), rev. denied (Minn., January 24, 1991), citing Minnesota Statutes, Section 806 (requiring the Office of the Attorney General to represent state officers in matters

(continued...)

General; the County Defendants appeared by Susan M. Tindal, Esq.; and Biggins also appeared on his own behalf. No appearance was made by, or on behalf of, the Plaintiff.[2]

---

[1](...continued)
pertaining to their official duties). However, given the uncertainty as to whether the Plaintiff intended to sue Biggins in his capacity as a private attorney, or as a Public Defender, Biggins has also appeared on his own behalf.

[2]A Notice of the Hearing on the Defendants' Motions was issued by the Court on August 3, 2005 -- nearly two (2) months before the Hearing. See, Docket No. 26. Following that Notice, the Plaintiff filed voluminous exhibits in response to the Defendants' Motions, see, Plaintiff's Exhibits, Docket Nos. 58-154,158-66, but the Plaintiff has not filed any Memorandum of Law in opposition to those Motions.

On September 27, 2005, the Plaintiff served, and filed, Motions to Disqualify two (2) of the three (3) defense counsel. See, Docket Nos. 168, 172. Notably, those Motions were filed in contravention of the Local Rules, see D. Minn. LR7.1(a), in that the Plaintiff did not secure a Hearing date for the Motions, which he noted as being before the District Court, the Honorable John R. Tunheim presiding, but instead, he included fictitious dates, and times. On September 28, 2005, the Plaintiff noticed a Motion for an Order to Show Cause for Contempt of Court against Biggins which, again, was scheduled before the District Court, but with a fictitious date and time. Those Motions were subsequently stricken from the Record on October 7, 2005, by Order of the District Court. See, Order, Docket No. 202.

On September 28, 2005, the Plaintiff filed a "Notice of Interlocutory Appeal," from this Court's Order of September 23, 2005, see Docket No. 167, which required the Plaintiff to comply with the Local Rules when submitting materials in response to the dispositive Motions, or seek leave of the Court to file any additional materials. Notably, in his Appeal to the District Court, the Plaintiff requested an "Immediate Stay on all pending matters now before the District Court Magistrate." Docket No. 191, at
(continued...)

For reasons which follow, we recommend that Biggins' Motions for a Judgment on the Pleadings be granted; that LeDuc's Motion to Dismiss be granted; and that the County Defendants' Motion to Dismiss, or in the alternative for Summary Judgment, be granted.

## II.   Factual and Procedural Background

In this action, the Plaintiff has asserted a host of claims against the Defendants, which relate to his arrest, and eventual prosecution, in the Minnesota State Courts. Specifically, the Plaintiff alleges that the Defendants have violated Title 42 U.S.C. §2000aa; Title 18 U.S.C. §§2510-2522; as well as the Plaintiff's constitutional rights

---

[2](...continued)
p. 2.

Despite the Plaintiff's request, our review of the file disclosed that no such stay was issued by the District Court.   Nonetheless, the Plaintiff transmitted an e-mail communication to each of the counsel for the Defendants, which advised that, "[a]s you are probably aware there would be an automatic stay on motions before Magistrate Judge Raymond Erickson," and stated that he would not be attending the Hearing on September 29.   Counsel for the County Defendants responded to that e-mail, by advising the Plaintiff that no such stay had been issued by the Court, and that she would be attending the Hearing.   We did not receive any communication from the Plaintiff concerning his attendance at the Hearing and, given his nonappearance, the Plaintiff waived any oral argument on the Defendants' dispositive Motions.   See, D. Minn. LR7.1(b)(2) and (d).   While the Plaintiff subsequently filed other Motions and papers with the Court, as we have noted, he has never filed a Memorandum in opposition to the Defendants' Motions.

under the First, Fourth, Fifth, Sixth, Ninth, Tenth, and Fourteenth Amendments.  The Plaintiff has also asserted sundry other claims against the Defendants, which include retaliation; conspiracy; "misprison;" malicious prosecution; vindictive prosecution; contractual interference; defamation; and abuse of process.  Given the Plaintiff's pro se status, the Complaint, when construed liberally, also appears to allege a Monell claim, see, Monell v. Department of Social Services., 436 U.S. 658, 691 (1978), against Koochiching County; as well as claims for false arrest; fraud; intentional infliction of emotional distress; a constitutional "takings;" violation of privacy; and discrimination. Furthermore, the Plaintiff alleges that Biggins, who was the Plaintiff's former attorney, breached his fiduciary duty, and committed legal malpractice by asking for, and receiving, a Court Order from a State Court Judge -- LeDuc -- which permitted Biggins to withdraw from his representation of the Plaintiff.

    A.    The Plaintiff's Initial Arrest and Booking.    On April 7, 2004, the Koochiching County Sheriff's Department received a citizen's complaint that approximately thirty (30) gunshots were fired near a roadway in the vicinity of Beltrami County Road 107, near Kelliher, Minnesota.  DeMuth, who is a Koochiching County Deputy, was dispatched to the location, where he observed a vehicle in the ditch. DeMuth approached the vehicle and observed the Plaintiff asleep in the front seat of

- 5 -

the vehicle and, having a concern that the Plaintiff was in possession of a weapon, he

called for assistance.  Winskowski, who is a Beltrami County Deputy, responded to

DeMuth's request for assistance, and arrived shortly thereafter.  <u>Affidavit of John</u>

<u>DeMuth,</u> ("<u>DeMuth Aff.</u>"), <u>Docket No. 50</u>, at ¶3.

Following the arrival of Winskowski, the two officers approached the vehicle,

and opened the passenger-side front door.  In so doing, the officers observed a

handgun on the center console area of the vehicle, near the Plaintiff's hands, and they

removed the gun from the vehicle.  At that point, the Plaintiff awoke, and was ordered

out of the vehicle.  DeMuth detected the strong odor of alcohol emanating from both

the vehicle, and from the Plaintiff's breath.  The Plaintiff then informed the officers that

someone else had been driving the vehicle, and he denied that there were any weapons

in the vehicle.  When confronted by the officers with the handgun, which had earlier

been removed from the vehicle, the Plaintiff replied that he had fired the gun the day

before, and that he had been stuck in the ditch for several hours.  The Plaintiff was

then subjected to a test that registered a 0.094 blood alcohol content level.  <u>Id.</u>

The deputies searched the vehicle, and the surrounding area, and recovered

three (3) spent rounds from the handgun.  The deputies also examined the vehicle's

trunk, and discovered a pistol case, an opened gun lock, numerous spent shell casings,

and two boxes of live rounds of ammunition.  Upon inspection, the officers noted that the spent casings smelled of burnt gunpowder.  Id.

The Plaintiff was subsequently arrested for carrying a gun while under the influence of alcohol, in violation of Minnesota Statutes Section 624.7142, which prohibits a person from carrying a pistol on or about the person's clothes, in a public place, while under the influence of alcohol, and for failing to provide proof of automobile insurance, see, Minnesota Statutes Section 169.791.  See, DeMuth Aff. at ¶4.  The Plaintiff's vehicle was subsequently impounded and inventoried by DeMuth. Id. at ¶5.  The Plaintiff was then booked at the Koochiching County Jail, and DeMuth provided him with a firearms implied consent advisory, pursuant to Minnesota Statutes Section 624.7143, Subdivision 3.

At that time, the Plaintiff asked to speak with an attorney, and DeMuth provided the Plaintiff with a telephone directory, as well as access to a telephone, and instructed him, repeatedly, to contact an attorney or reach a decision as to whether he would consent to the chemical test.  The Plaintiff was able to contact an attorney, but he asked that he be allowed to wait until the attorney arrived at the Jail before making an election as to whether to submit to the test.   See, Plaintiff's Transcript of Videotape,

<u>Docket No. 23</u>.  After roughly thirty (30) minutes, DeMuth concluded that the Plaintiff would not give his consent to a chemical test.  <u>Id.</u> at p. 31; <u>DeMuth Aff.</u>, at ¶7.

Most of the Plaintiff's Complaint appears to be premised on the existence of a videotape, which recorded the Plaintiff's interactions with DeMuth at the Koochiching County Jail.  The Plaintiff has asserted that, while he was in custody, "[the] Defendants by design employed cameras with sound recording and other phone taps in areas that would defeat any privacy for persons detained at the Koochiching County Jail," and that "[t]he areas in which the recordings and interrogations would take place from the view of the control room."  <u>Complaint, Docket No. 1</u>, at ¶26.  The Plaintiff has further asserted that:

> The jailers, deputies, and county employees by practice, and or policy custom, and or pattern did then on April 7, 2004 use this layout and procedure to create an atmosphere contrary to the intent of federal law that was intended to protect privileged communications of attorney client communications [and] * * * [t]he Defendants did then use the intercepted communications and did benefit from the surreptitious recordings by;
>
> a)     Using the tape for maliciously filing a civil action in case Duane Nelson Et. Al. v. Thomas James Erickson, Koochiching County Case No. C0-04-317. knowing the issue was barred by resjudicata [sic] under Beltrami County Case of In Re Erickson -- Mandamus Action Case No, C0-04-946.

- 8 -

      b)     Under the guise of an arrest(s) lacking probable cause and for no proof of insurance charges where under interrogation and oppression of and willful disregard for Plaintiff's involving federal compelling rights by circumstance and design for evidence gathering for both civil and criminal matters without due process or notice, and deprivations of counsel.

      c)     Concealing the tape for four months in order to cut out portions that were exculpatory as to charges of refusing to take a test.

      d)     And use of the tape to justify other searches and seizures of destruction personal property.  Such as destruction of a camera, theft of eyeglasses, court papers, pistols, and recorders.

Id. at ¶¶28-29.

The criminal charge of possession, which stemmed from this incident, was ultimately dismissed on July 26, 2004.  Affidavit of Jennifer Hasbargen, ("Hasbargen Aff."), Docket No. 47, ¶5.

     B.   Koochiching County Security Procedures.  The booking room of the Koochiching County Jail is monitored by security cameras, in order to protect the safety of the Jail staff and residents, and as a means of monitoring criminal defendants. DeMuth Aff., at ¶8.; Affidavit of John Mastin ("Mastin Aff."), Docket No. 48, ¶4. The monitor also ensures the integrity of any administered chemical tests.  However, the telephone, which was used by the Plaintiff to contact an attorney in the booking

room, was not electronically monitored.  Mastin Aff., at ¶5.  The County Defendants

aver that the phone the Plaintiff used was the only phone accessible to criminal

defendants that was not monitored for security reasons.  Id.

      C.     The Plaintiff's Inventoried Property Complaint.   Subsequently, the

Plaintiff complained to the Sheriff's Department about the property that was

inventoried, and held in connection with his arrest on April 7, 2004.  Affidavit of

Duane Nelson ("Nelson Aff."), Docket No. 49, at ¶4.  The complaint was internally

investigated by Nelson, who conducted interviews as well as an examination of the

reports made in connection with the Plaintiff's arrest.  Mastin Aff., at ¶2.  The

investigation uncovered no evidence of any misconduct, and the investigation was

closed.  Id.   The Sheriff's Department has represented that it still maintains, in its

possession, the ammunition, gun, and gun case, which were confiscated from the

Plaintiff, because the Plaintiff has apparently failed to establish proof of ownership of

that property, which is necessary for the Defendants to relinquish confiscated

property.[3]

_____

     [3]At the Hearing, counsel for the County Defendants informally requested an
Order from this Court to compel the Sheriff's Department to relinquish the gun, gun
case, and ammunition, to the Plaintiff.  Without a formal invocation of this Court's
                                                     (continued...)

D.   <u>Biggins Representation of the Plaintiff</u>.   Biggins was retained by the Plaintiff on April 7, 2004, after the Plaintiff's arrest.   See, <u>Answer to Complaint by Bruce Biggins</u> ("<u>Biggins Answer</u>"), <u>Docket No. 10</u>, at ¶7; <u>Id.</u> at  Ex. 1.   Biggins and the Plaintiff entered into a "contract an attorney-client-agreement was amended but in that contract the attorney could not withdraw without first sending written notice to withdraw." <u>Complaint</u>, at ¶79.   Partially as a result of Biggins' efforts, the Plaintiff was released from jail.   <u>Biggins Answer</u>, at ¶7.   The charge which asserted a failure to provide proof of insurance was dropped based upon Hasbargen's prosecutorial discretion.   <u>Id.</u>   In a retainer contract previously signed by the Plaintiff, Biggins was permitted to withdraw, if Biggins did not receive a payment of $1,000.00 from the Plaintiff, by April 12, 2004.   <u>Id.</u> at ¶9.   The Plaintiff subsequently paid Biggins $350.00.   Biggins later sought a Court Order from LeDuc, who is a Koochiching County Judge, which would authorize his withdrawal because of the non-payment of the agreed retainer.   <u>Id.</u>; <u>Complaint</u>, at ¶¶81, 130.   The Court Order was granted on

---

[3](...continued)
jurisdiction to direct a County Official to perform any such activity, which appears to be in the nature of a Mandamus, we declined to do so here.   The County Officials are at liberty to release the property in question without a Court Order, or to seek an Order from the State District Court whose jurisdiction was invoked in its seizure.

April 26, 2004.  <u>Biggins Answer</u>, at ¶9.   On April 27, 2004, Biggins notified the Plaintiff that he had withdrawn as the Plaintiff's attorney, pursuant to their agreement, and the Court Order of April 26, 2004.  <u>Id.</u>

Biggins subsequently continued to provide the Plaintiff with legal advice, as an Assistant Public Defender, and was formally appointed as counsel for the Plaintiff on June 30, 2004.  <u>Id.</u>  Biggins represented the Plaintiff in his criminal proceedings and, on July 15, 2004, he requested the dismissal of the last remaining criminal charge, after a Minnesota State Court Judge permanently enjoined the enforcement of the statutory provision upon which that charge was based.  <u>See</u>, <u>Biggins Answer</u>, at ¶8.  On that same date, the Plaintiff dismissed Biggins as his public defender.  As previously noted, the criminal charge of possession was dismissed on July 26, 2004.

E.     <u>Civil Actions in Minnesota</u>.  Prior to the dismissal of the criminal charge, a civil Complaint was filed against the Plaintiff on May 11, 2004, which sought civil damages, and the revocation of the Plaintiff's right to carry a pistol in public, that stemmed from the events of April 7, 2004.  See, <u>Plaintiff's Exhibit</u>, <u>Docket No. 81</u>, Att. 3; see also, <u>Minnesota Statutes Sections 624.7142 and 624.7143 Subdivision 2.</u> Amongst the evidence that Hasbargen, as the prosecuting attorney, used in the civil case was a portion of the videotape that had been made of the Plaintiff's interactions

- 12 -

with DeMuth, at the Koochiching County Jail.  See, Complaint, at ¶35.  The Plaintiff contends, here, that the civil charge was brought as a result of a malicious prosecution, and that the videotape, which was recorded when he was booked on April 7, 2004, was wrongfully utilized in the civil case against him.  The civil case was dismissed concurrently with the dismissal of the underlying criminal charge.  See, Hasbargen Aff., at ¶7.

As disclosed in the documents filed by the Plaintiff, he has previously sued numerous Koochiching County employees in Federal Court, including several who are presently named as Defendants in the pending action.  See, Complaint, at ¶¶54,  70; Plaintiff's Exhibit, Docket No. 154.   In July of 2004, the Koochiching County Administrator issued an Eviction Summons to the Plaintiff for wrongfully possessing tax-forfeited land that allegedly belonged to the State of Minnesota.  The Plaintiff removed that action to this Court, and the matter was referred to the undersigned  on a Motion to Dismiss that was brought by the defendants, there.  Following a Hearing on that Motion, we concluded that we were without subject matter jurisdiction, and we recommended that the matter be remanded to the Minnesota State Courts.  By Order dated March 7, 2005, the District Court, the Honorable John R. Tunheim presiding, adopted our Report and Recommendation, and the matter was remanded.   See,

Koochiching County v. Erickson, Civ. No. 04-3477 (JRT/RLE), Docket No. 104, at p. 13, adopted, Koochiching County v. Erickson, 2005 WL 1432347 (D. Minn., March 7, 2005).

F.     Wherley's Contact with the Plaintiff.     Wherley, who is a Deputy with Beltrami County, received documents to serve on the Plaintiff in Waskish, Minnesota, which consisted of a videotape and a civil Complaint.  Wherley repeatedly attempted to serve the Plaintiff at the Plaintiff's home.  On June 21, 2004, Wherley observed the Plaintiff in Kelliher, Minnesota, in the parking lot of Thor's Bar.  Wherley followed the Plaintiff into the parking lot, and turned on his patrol vehicle's lights to get the Plaintiff's attention.  As the Plaintiff approached him, Wherley served the Plaintiff with the civil Complaint.  Affidavit of Scott Wherley ("Wherley Aff."), Docket No. 51, ¶¶ 3-4.  The Plaintiff alleges that Wherley engaged in "'[u]lawful' or improper service in that service was conducted by a deceptive stop using flashing lights and the act of blocking in the Plaintiff's vehicle using a patrol vehicle."  Complaint, at ¶36.  Wherley has averred that he does not have any regular contact with the Koochiching County Deputies, and that he has not spoken with any Koochiching County Deputy, or employee, regarding any matter concerning the Plaintiff, or the Plaintiff's activities.  Wherley Aff., at ¶5.

G.    <u>Alleged Injuries Perpetrated Against the Plaintiff</u>.   As best as we can

discern from the Plaintiff's Complaint, as well as from the myriad of documents he

has submitted as Exhibits,[4] the Plaintiff claims to have been injured by his inability to

prosecute a number of actions -- which he describes as "his business" -- that were, or

are pending, before various Michigan State Courts, or the United States District Court

for the Eastern District of Michigan.    See, <u>Complaint</u>, at ¶59; <u>Plaintiff's Exhibits,</u>

<u>Docket Nos. 63, 64, 66, and 68.</u>   Prior to the actions commenced against him in

Minnesota, the Plaintiff had been involved in multiple legal actions in Michigan.[5]   The

---

[4]Many of the documents that the Plaintiff has filed with the Court have no
apparent connection to the matter pending before us -- such as the voir dire Jury
questionnaire from one of the Plaintiff's criminal cases, see, e.g., <u>Plaintiff's Exhibit</u>
<u>No. 39</u>, <u>Docket No. 93.</u>   However, based upon the Plaintiff's standing as a <u>pro se</u>
litigant, we have construed his Complaint indulgently.   However, we note that the
Plaintiff has failed to explain why he was unable to return to Michigan to conduct his
"business," as there is no indication, in the Record, that he was held in custody
throughout his civil and criminal actions in this State.

[5]Despite "residing" in Minnesota, and making adverse possession claims on a
piece of property in Koochiching County, Minnesota, the Plaintiff maintains that he is
a resident of Michigan for the purposes of establishing diversity jurisdiction. See, <u>Title</u>
<u>28 U.S.C. Section 1332.</u>   However, the Plaintiff has alleged that the  present case
comes before us on the Federal law claims.  See, <u>Complaint</u>, at ¶7 ("The acts all
occurred or arose within the Federal Jurisdiction of the Federal District Court for the
State of Minnesota and where the Federal District Court has exclusive jurisdiction
under * * * Federal Question Jurisdiction, 28 U.S.C. §1331 and <u>*supplemental*</u>
jurisdiction, 28 U.S.C. §1367,")(emphasis in original), <u>Title 28 U.S.C. Section 1331</u>.

(continued...)

Plaintiff claims that, as a result of having to defend himself in the civil and criminal proceedings in Minnesota, he has been unable to represent himself in the multiple actions that were venued in Michigan.

Among the "injuries" alleged to have been incurred by the Plaintiff's "business" are: Default Judgments, in May of 2004, which were entered against the Plaintiff for blight ordinance violations, see, Plaintiff's Exhibit No. 8, Docket No. 63; a Judgment against the Plaintiff in a civil case he commenced against General Motors and numerous defendants, see, Plaintiff's Exhibit No. 9, Docket No. 64; an adverse paternity determination in May of 2005, that resulted in the Plaintiff being found in contempt-of-court for failure to appear, see Plaintiff's Exhibit No. 11, Docket No. 66; and a non-appearance in a "retaliation claim," which was brought by the Plaintiff when he allegedly was "kidnapped" by a County Judge, see Plaintiff's Exhibit No. 13, Docket No. 68, and Erickson v. Cherry, 2005 WL 2038585 (E.D. Mich., February 18, 2005). The Plaintiff has also claimed that a contract was lost, for a land holding in Michigan, but he does not expressly state how the Defendants' actions resulted in the

---

[5](...continued)

Therefore, we make no explicit finding, here, as to the Plaintiff's State citizenry for diversity jurisdiction purposes.

loss of that contract, other than his need to devote time in Minnesota to answer the firearm possession charge.  See, <u>Complaint</u>, at ¶ 59, 77.  The Plaintiff also claims that statements made when he was arrested, i.e., the filings in the Minnesota State Court cases, "damaged" his reputation, and "adversely" affected his business and security clearances in the National Crime Information Network.  <u>Id.</u> at ¶¶64-66.  He also claims that property, which was maintained as evidence in the cases, has yet to be returned to him.  <u>Id.</u> at ¶63.   Finally, the Plaintiff alleges that a loan, which he took out to pay for his criminal defense, and for which he used his car and tools as collateral, was defaulted, although he does not offer any connection between any acts of the Defendants, and the status of his loan.  <u>Id.</u> at ¶78, 82.

### III.  <u>Discussion</u>

A.    <u>LeDuc's Motion to Dismiss</u>.

1.    <u>Standard of Review</u>.  "When reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the [nonmoving party]."  <u>Riley v. St. Louis County</u>, 153 F.3d 627, 629 (8th Cir. 1998), cert. denied, 525 U.S. 1178 (1999), citing <u>Double D Spotting Serv., Inc. v. Supervalu, Inc.</u>, 136 F.23d 554, 556 (8th Cir. 1998); see also, <u>Maki v. Allete, Inc.</u>, 383 F.3d 740, 742 (8th Cir. 2004).  In addition,

all reasonable inferences, from the facts alleged in the Complaint, must also be drawn in favor of the nonmoving party.  Maki v. Allete, Inc., supra at 742.  "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief."  Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001), citing Breedlove v. Earthgrains Baking, 140 F.3d 797, 799 (8th Cir. 1998); see also, Maki v. Allete, supra at 742; Helleloid v. Independent School Dist. No. 361, 149 F. Supp.2d 863, 866-67 (D. Minn. 2001).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity."  Young v. City of St. Charles, supra at 627, citing Neitzke v. Williams, 490 U.S. 319, 326-27 (1989).  "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions."  Id., citing Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998).

A Motion to Dismiss can be converted to a Rule 56 Motion for Summary Judgment if "matters outside the pleadings are presented to and not excluded by the court."  Rule 12(b), Federal Rules of Civil Procedure.  However, a Court may

consider some information, which is not contained within the Complaint -- such as materials that are part of the public record, and materials that are necessarily embraced by the pleadings -- without transforming the Motion into one for Summary Judgment. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999); see, Enervations, Inc. v. Minnesota Mining and Manufacturing Co., 380 F.3d 1066, 1069 (8th Cir. 2004); Stahl v. United States Department of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003). Since our recommendation, as to LeDuc's Motion, rests entirely upon the pleadings, materials within the public record, and materials that are necessarily embraced by the pleadings, we analyze the Defendants' Motion, under the framework of Rule 12(b)(6), rather than under the regimen of Rule 56.

2. Legal Analysis. The Plaintiff claims that LeDuc, who is a Minnesota State District Court Judge, committed contractual interference in the Plaintiff's attorney-client relationship with Biggins, when he issued a Court Order which permitted Biggins to withdraw from his representation of the Plaintiff. Complaint, at ¶130. The Plaintiff also broadly claims that LeDuc acted in "furtherance and cover-up of acts and aiding the civil conspiracies." Id. at ¶23.

Where, as here, a Judicial Officer acts within his jurisdiction to perform a judicial function, the Judicial Officer is absolutely immune from suit. See, Mireles v.

- 19 -

Waco, 502 U.S. 9, 11 (1991)("[L]ike other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages."), citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). "Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." Id., quoting Pierson v. Ray, 386 U.S. 547, 554 (1967)( "[I]mmunity applies even when the judge is accused of acting maliciously and corruptly.").

It cannot seriously be denied that the issuance of a Court Order, which permits an attorney to withdraw from the representation of a client, is a judicial act. "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Edlund v. Montgomery, 355 F. Supp.2d 987, 990 (D. Minn. 2005), quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978).

While we understand the Plaintiff to broadly allege that LeDuc somehow conspired with the other Defendants, such broad and nonspecific assertions of collusion fail as a matter of law. See, Johnson v. Esry, 210 F.3d 379, 2000 WL 375269 at *1 (8th Cir., April 13, 2000)[Table disposition], citing Manis v. Sterling, 862

F.2d 679, 681 (8th Cir. 1988)("Allegations of conspiracy, however, must be pled with sufficient specificity and factual support to suggest a 'meeting of the minds.'"), quoting Smith v. Bacon, 699 F.2d 434, 436 (8th Cir. 1983).   Here, the Plaintiff's conspiracy allegations fail to meet that test, as they are entirely devoid of specificity and factual support.

"Judicial immunity discourages inappropriate collateral attacks and 'protect[s] judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants.'"   Edlund v. Montgomery, supra at 990, quoting Forrester v. White 484 U.S. 219, 225 (1988).   The circumstances presented here readily underscore the need for judicial immunity.   LeDuc did nothing more than to grant a Motion allowing Biggins to withdraw from representing the Plaintiff, which the Plaintiff subsequently ratified by terminating Biggins' legal services.   Moreover, the Plaintiff has filed no opposition to LeDuc's Motion, either in writing or orally, which amply demonstrates that the naming of LeDuc as a Defendant was frivolous, if not vexatious. Therefore, we recommend that the Plaintiff's causes of action against LeDuc be dismissed, with prejudice, on the basis of absolute judicial immunity.

B.    <u>The County Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment.</u>

In support of their Motion, the County Defendants have submitted the Affidavits of Tindal, Hasbargen, Mastin, Nelson, DeMuth, and Wherley.  In addition, the Plaintiff has submitted a voluminous agglomeration of materials as Exhibits, apparently in response to the Defendants' Motions.  See, <u>Docket Nos. 58-151, 158-166</u>.  Generally, a Court may not consider "matters outside the pleadings," on a Rule 12(b)(6) Motion to Dismiss, without converting that Motion into one for Summary Judgment.  See, <u>Rule 12(b)(6), Federal Rules of Civil Procedure</u>; see also, <u>Trimble v. Asarco, Inc.</u>, 232 F.3d 946, 955 (8th Cir. 2000).   Since we have reviewed all of the parties' submissions, including the entirety of the Exhibits, and since we have considered those materials in reaching our disposition of the Motion, we construe the Defendants' Motion as one for Summary Judgment.

1.    <u>Standard of Review</u>.  Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations.  See, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986); <u>Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.</u>, 387 F.3d 705,

- 22 -

711 (8th Cir. 2004), cert. denied, --- U.S. ---, 125 S.Ct. 1860 (2005).  Summary

Judgment is appropriate when we have viewed the facts, and the inferences drawn

from those facts, in a light most favorable to the nonmoving party, and we have found

no triable issue.  See, Eide v. Grey Fox Technical Servs. Corp., 329 F.3d 600, 604 (8th

Cir. 2003); Philip v. Ford Motor Co., 328 F.3d 1020, 1023 (8th Cir. 2003); United Fire

& Casualty Co. v. Garvey, 328 F.3d 411, 413 (8th Cir. 2003).  For these purposes, a

disputed fact is "material" if it must inevitably be resolved and the resolution will

determine the outcome of the case, while a dispute is "genuine" if the evidence is such

that a reasonable Jury could return a verdict for the nonmoving party.  See, Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Planned Parenthood of Minnesota/

South Dakota v. Rounds, 372 F.3d 969, 972 (8th Cir. 2004); Fenney v. Dakota,

Minnesota & Eastern R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003).

As Rule 56(e) makes clear, once the moving party files a properly supported

Motion, the burden shifts to the nonmoving party to demonstrate the existence of a

genuine dispute.  In sustaining that burden, "an adverse party may not rest upon the

mere allegations or denials of the adverse party's pleading, but the adverse party's

response, by affidavit or as otherwise provided in this Rule, must set forth specific

facts showing that there is a genuine issue for trial."  Rule 56(e), Federal Rules of Civil

Procedure; see also, <u>Anderson v. Liberty Lobby, Inc.</u>, supra at 256; <u>Eddings v. City of Hot Springs, Ark.</u>, 323 F.3d 596, 602 (8th Cir. 2003).  Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, supra at 322; see also, <u>Forest Park II v. Hadley</u>, 408 F.3d 1052, 1057 (8th Cir. 2005); <u>Mercer v. City of Cedar Rapids</u>, 308 F.3d 840, 843 (8th Cir. 2002); <u>Hammond v. Northland Counseling Center, Inc.</u>, 218 F.3d 886, 891 (8th Cir. 2000).  No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  <u>Celotex Corp. v. Catrett</u>, supra at 323; see also, <u>Sallis v. University of Minnesota</u>, 408 F.3d 470, 474 (8th Cir. 2005); <u>Davis v. U.S. Bancorp</u>, 383 F.3d 761, 768 (8th Cir. 2004); <u>Bell Lumber and Pole Co. v. United States Fire Ins. Co.</u>, 60 F.3d 437, 441 (8th Cir. 1995).

   2. <u>Legal Analysis</u>.  The Defendants advance a variety of bases in support of their request for Summary Judgment, which we address separately.

     a. <u>Standing</u>.  Article III of the United States Constitution restricts Federal Courts to the adjudication of actual "cases" and "controversies."  The principle of "standing" is among several doctrines -- such as mootness, ripeness,

- 24 -

and the involvement of a political question -- which have developed to inform and define the "case or controversy" requirement.  See, <u>Allen v. Wright</u>, 468 U.S. 737, 750 (1984); <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975); <u>Ben Oehrleins and Sons and Daughter, Inc. v. Hennepin County</u>, 115 F.3d 1372, 1378 (8th Cir. 1998) ("Standing is the constitutional requirement, imposed by the 'cases or controversies' provision of Article III, that a plaintiff must allege a judicially cognizable and redressable injury in order to pursue a lawsuit."); <u>Neighborhood Transp. Network, Inc. v. Pena</u>, 42 F.3d 1169, 1172 (8th Cir. 1994)("Federal courts are courts of limited jurisdiction and can only hear actual 'cases or controversies' as defined under Article III of the Constitution.").  "As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf."  <u>Warth v. Seldin</u>, supra at 498-99, quoting <u>Baker v. Carr</u>, 369 U.S. 186, 204 (1982).

It is a plaintiff's duty to establish the "minimal constitutional requirements" that are essential to standing.  <u>Ben Oehrleins and Sons and Daughter, Inc. v. Hennepin County</u>, supra at 1378.  Those elements include:

> [A]n "injury in fact" that is both (a) concrete and particularized, and (b) actual or imminent, rather than conjectural or hypothetical; (2) a causal connection between the alleged injury and the defendant's conduct; that is, that the injury is "fairly traceable" to the challenged action; and (3) that it is likely that a favorable decision will redress the injury.

Id., citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1992).

Summed up, "[a] federal court's jurisdiction * * * can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from putatively illegal action[.]'" Warth v. Seldin, supra at 499, quoting Linda R.S. v. Richard D., 410 U.S. 614, 617 (1973).

In this case, the Plaintiff alleges, among his often rambling complaints, that his injuries stem from having to defend himself, in Minnesota criminal and civil cases, while a number of his Court proceedings, in the State of Michigan, were left unattended, which resulted in the issuance of multiple dismissals, and Default Judgments, against his interests. See, Complaint, at ¶59. Further, he asserts that, "on July 12, 2004 a contract regarding holdings in Michigan were [sic] lost as a result ant [sic] to which there existed the atmosphere of intentional disregard," and "[t]hat the loss involving a farm in Michigan was a loss of land valued at approximately $120,000.00." Id. In addition, the Plaintiff asserts that:

- 26 -

> [T]he contract involving the Michigan farm was entered into in March of 2004 and with the belief that other vehicles, tools and building materials would be moved. Plaintiff however directly stemming from the unlawful arrests could not meet with the buyers he was in contact with and where the matter had to be closed on or before July 12, 2004. Plaintiff alleges that the contract that the defendants knew they were interfering with did in fact cause additional losses approximated at $20,000.00.

Id. at ¶77.

Under the facts of this case, we are unable to identify any causal connection between the actions of the Defendants, and the Plaintiff's alleged injuries.

Even with the most generous of constructions, the Plaintiff has failed to show that his having to respond to a criminal charge, or to a civil action in this State, had any bearing on his legal proceedings in Michigan. The Plaintiff was only held in custody for a short period of time on April 7, 2004, and was released on that very same day. See, Plaintiff's Exhibit No. 7, Docket No. 62. He has not demonstrated that, as a part of any Minnesota proceeding, he was required to remain within the borders of this State and, in fact, the Plaintiff has admitted that he was able to "obtain[] a loan from [sic] after a quick trip in Michigan," which was made in April of 2004, following the commencement of the Minnesota criminal proceeding. Complaint, at ¶79.

- 27 -

From our examination of the Record, the Plaintiff has not identified any restriction on his ability to appear in Michigan, in order to address any legal proceedings, or business affairs, during any period of time following his arrest in Minnesota. The Record is also devoid of any action, by the Defendants, that would have precluded the Plaintiff from completing any of his alleged land deals, or any other legal transaction. The most that can be said is that the pendency of the actions in Minnesota generally overlapped with certain legal proceedings that the Plaintiff had commenced in Michigan, but there is no showing that the Plaintiff was unable to manage his legal obligations, in Michigan, by the act of any Defendant in Minnesota.

Through the remarkable facility of electronic filing, we were able to trace certain of the causes of action, which the Plaintiff identified in his voluminous exhibits, and the results are enlightening. By way of example, we note that, in Erickson v. Cherry, et al., Civ. No. 03-73106-JF, which pended in the United States District Court for the Eastern District of Michigan, the District Court dismissed the Plaintiff's action against the defendants, there, for his failure to respond to the defendants' Motions for Summary Judgment. In dismissing the action, the Court noted that the defendants, as well as the Court, unsuccessfully sought to obtain a response from the Plaintiff. See, 2:03-cv-73106-JF, Document 12, filed on February 18, 2005, Erickson v. Cherry,

supra. Notably, the Minnesota criminal proceeding against the Plaintiff was dismissed on July 26, 2004, as were the civil proceedings to revoke the Plaintiff's license to bear a firearm in public. The Plaintiff provides no explanation as to why he did not respond, by letter or otherwise, to the District Court in Michigan, during the period from July 26, 2004, through February 18, 2005, when that Court dismissed the Plaintiff's causes of action.

Similarly, in <u>Erickson v. General Motors Corp., et al.</u>, Case Nos. 03-74839, and 03-75139-VAR-DAS, which pended in the United States District Court for the Eastern District of Michigan, the District Court issued an Order on March 11, 2004, which dismissed, as failing to state a lawful claim, a case which the Plaintiff commenced in the Federal District Court, and remanded a companion case which he had removed from the Michigan State Courts. See, <u>03-cv-75139-VAR-DAS, Document 2</u>, filed on March 11, 2004.[6] In the course of dismissing, or remanding, those actions, the Court explained its reasons, as follows:

> Since 2001, Thomas Erickson has filed at least four cases
> in this federal district, and is plaintiff in three additional

---

[6]The companion Michigan State Court case, which the Plaintiff removed to the Federal District Court in Michigan, is the same case that the Plaintiff cites in his Exhibit No. 9, Document 64-2, which he filed in this action.

cases which were removed here.  Four, including Case No. 03-84839 and federal claims in Case No. 03-75139, have been dismissed for failure to state a claim.  These cases have all named multiple defendants who have had to defend against Mr. Erickson's frivolous claims.  In all of these federal court actions, Mr. Erickson has appeared in pro per.

He has filed multiple cases in various Michigan state courts as well.  At least three were filed in Oakland County Circuit Court in 2003 alone (two were removed here); at least six have been filed in Genessee County Circuit Court since 1991.  These state court cases have been filed in pro per as well.  In July 2002, Judge Beagle in the Genessee Circuit Court issued an order prohibiting Mr. Erickson from filing any further motions or complaints with that Court unless he posted a bond because of his inappropriate and abusive litigation tactics.

*   *   *

Here, [Mr. Erickson] has filed at least seven cases in this Court with overlapping claims.  He has never once been represented by a lawyer, which probably says much about the strength of his allegations.  His litigiousness has caused needless expense to parties and their attorneys, and has resulted in the waste of not only their valuable resources, but the resources and time of this Court as well.

Mr. Erickson will not be deterred by any sanction short of an injunction.  His abuse of judicial process is likely to continue unless he is enjoined.  Thus to prevent Mr. Erickson from further abusing the legal process: HE IS PRECLUDED AND RESTRAINED from filing any new actions in the United States District Court for the Eastern

District of Michigan WITHOUT OBTAINING LEAVE OF
THIS COURT.

Id. at pp. 2-4.

We reference the foregoing in order to demonstrate that certain of the causes of action,

to which the Plaintiff has cited, fail to disclose any inability, on his part, to prosecute

the claims he commenced owing to actions by any Defendant in this case.   For

example, the Record is bereft of any evidence that the Plaintiff contacted any Michigan

Court, State or Federal, seeking to obtain a continuance, or advising that the press of

his legal business, in Minnesota, precluded his prosecution of his claims in Michigan.

By every appearance, when it suits his purpose, the Plaintiff simply fails to

meaningfully respond to legal matters, which is precisely the approach he elected in

failing to respond to the pending dispositive Motions in this Court.

        In addition, the Plaintiff has failed to detail, with any specificity, any actual

injuries that have "adversely effect [sic] him in his business and security clearances by

reporting a felony by publication to the National Crime Information Network."  See,

Complaint, at ¶64. The Plaintiff does allude to a potential loss of business or

employment opportunities, based upon the impact of those clearances.   Id. at ¶133.

However, those opportunities would appear to be highly conjectural and hypothetical,

as he has cited no instances in which his purportedly altered security clearance,

assuming it has been detrimentally affected, has led to any actual loss of a business or employment opportunity.

In sum, on this Record, the Plaintiff has failed to demonstrate that he has standing to advance his claims against the Defendants, as to which he claims damages for failing to appear in Michigan, given his inability to articulate a viable causal connection between the Defendants' alleged actions, and his asserted "injuries" in that State.

b.    Section 1983 Claims Against the County Defendants.  In the context of Section 1983, Complaints must be prepared "in a fashion that will identify the constitutional claims as against only culpable defendants."  Liggins v. Morris, 749 F. Supp. 967, 971 (D. Minn. 1990); see also, Ringsred v. City of Duluth, 187 F. Supp. 1141, 1152 (D. Minn. 2001), aff'd,  39 Fed. Appx. 480 (8th Cir. 2002), cert. denied, 537 U.S. 1102 (2003)("Section 1983 disputes, which frequently are spawned in rage or insult, lend themselves to [] imprecision and vagueness").  As the Court observed, in Liggins v. Morris:

> The time has come for practitioners in this district to prepare complaints alleging violations of 42 U.S.C. §1983 in a fashion that will identify the specific claims of individual plaintiffs for specific constitutional violations as against only culpable defendants.  This court is no longer disposed

to perform what should be the responsibility of diligent counsel in that regard.   Accordingly, when hereafter confronted with a complaint that does nothing more than identify a multitude of parties, a plaintiff, a number of defendants, a series of counts, and allegations of violations of every known constitutional provision and common law cause of action, the court will deem the complaint inadequate.   Such a complaint will be subject to dismissal for failure to comply with Rule 8 and Rule 11 of the Federal Rules of Civil Procedure.   In addition, the potential application of sanctions in the form of attorney's fees or other appropriate relief under Rule 11 will be seriously addressed.

Id.; see also, Ringsred v. City of Duluth, supra at 1152.

Here, it is impossible to ascertain, from a plain reading of the Plaintiff's Complaint, the actions, or omissions, of each of the named County Defendants which form the basis for the claims asserted.

Quite simply, the Plaintiff's Complaint fails to place each of the County Defendants on notice as to the bases for the claims against which each must defend. Instead, the Plaintiff "requests that the jury determine of the named defendants who is liable," for each of his multiple, asserted claims.   See, Complaint, at ¶¶120-29. Specifically, the County Defendants complain that the Plaintiff has not named any of the following Defendants, in any specifically pled claim:  Gary Jensen, Mastin, Kalar, Hervey, Mary Lou Jensen, Millette, Rogers, Paulbeck, Hummitzch, Jane and John

- 33 -

Does, and the Sheriff's Department.  Other than allusions to a general "conspiracy," which presumably involved the named County Defendants, but no factual allegation, or claimed injury, that flows from their implied involvement in any action whatsoever, is presented in the Plaintiff's Complaint.

The extent to which the County Defendants -- who were not named in any specific charge -- were involved with the Plaintiff appears to center on the taping, and procurement of the videotape, when the Plaintiff was in custody at the Koochiching County Jail.  The Plaintiff appears to allege that those Defendants conspired to deprive him of his civil rights, but without specifying how those rights were deprived.  While offering conclusory allegations, the Plaintiff fails to explain what actual injury occurred to him, other then the speculation that the tape supposedly brought about a criminal prosecution, and a related civil suit, which resulted in his failure to attend to his "business," and Court cases in Michigan, over the course of many months.

Notably, however, the Plaintiff does not demonstrate how the existence of the videotape actually brought about any harm to him, and he fails to demonstrate any statements, or admissions, that were used against his interest, and that were obtained from that tape, nor has he shown any other intelligible connection between the videotape, and any asserted injury.  In truth, the criminal charges against the Plaintiff

were dropped, and the civil proceeding, which involved his licensure to carry firearms, was also dismissed.    The dismissal of those charges was attributable to an adjudication, by a Minnesota District Court, that the Minnesota statute, upon which the charges were predicated, was null and void.    Therefore, finding no viable legal claim as to any of the County Defendants whose purportedly unlawful acts were not identified in the Plaintiff's Complaint, we recommend that Summary Judgment be granted to those Defendants.[7]

-----

[7]Among the Plaintiff's innumerable filings is a letter, which is dated August 12, 2005, and which requests the Clerk of Court to enter a Default Judgment as to  LeDuc, and certain of the County Defendants.  See, <u>Docket No. 157</u>.  Nonetheless, electronic filing reflects that the Plaintiff did not docket his letter until September 21, 2005.  Even as of the date of the Plaintiff's letter -- August 12, 2005 -- the County Defendants had filed an Answer to the Plaintiff's Complaint, and had also filed their dispositive Motion, as had LeDuc.  See, <u>Docket Nos. 14, 38, and 42</u>.  If the Plaintiff had been interested in obtaining an entry of default, one would have thought he would have filed his request prior to the appearances of the Defendants.   We leave it to the Plaintiff to explain why he would file a letter on September 21, which was dated August 12, without expressly drawing that discrepancy to the Clerk's attention but, given the appearances of each of the Defendants, prior to the August 12 date, we recommend that his request for an entry of default be denied as without merit.  See, <u>In re Jones Truck Lines, Inc.</u>, 63 F.3d 685, 688 (8th Cir. 1995)("The entry of default judgment is not favored by law, [United States ex rel. Time Equip. Rental & Sales, Inc. v.] Harre, 983 F.2d [128,] 130 [(8th Cir. 1993)], and should be a 'rare judicial act,'"), citing Comiskey v. JFTJ Corp., 989 1007, 1009 (8th Cir. 1993), quoting Edgar v. Slaughter, 548 F.2d 770, 773 (8th Cir. 1977); <u>American States Insurance Corporation v. Technical Surfacing, Inc.</u>, 178 F.R.D. 518, 521 (D. Minn. 1998) ("Accordingly, '"[w]hen a
(continued...)

c.      Koochiching County Sheriff's Department is Not a Legal Entity for Purposes of this Suit.

The Plaintiff has asserted a claim, under Section 1983, against the Koochiching County Sheriff's Department.   However, the Sheriff's Department is not a separate legal entity, and its liability is the same as that of the municipality involved -- namely, Koochiching County.  See, e.g., Tilson v. Forrest City Police Dep't, 28 F.3d 802, 807 (8th Cir. 1994)("'For the [Police] Department to be liable under §1983 for a constitutional violation, a claimant must show that the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the Department] or that a constitutional deprivation [was] visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.'"), quoting Marchant v. City of Little Rock, 741 F.2d 201 (8th Cir. 1984); In re Scott County Master Docket, 672 F. Supp. 1152,

_____

[7](...continued)

defendant appears and indicates a desire to contest an action, a court may exercise its discretion to refuse to enter default, in accordance with the policy of allowing cases to be tried on their merits.'"), citing Wendt v. Pratt, 154 F.R.D. 229, 230 (D. Minn. 1994), quoting Lee v. Brotherhood of Maintenance of Way Employees, 139 F.R.D. 376, 381 (D. Minn. 1991), citing, in turn, 10 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d, §2593, at p. 411.

- 36 -

1163 n.1 (D. Minn. 1987).  While we doubt that a Sheriff's Department may be a legal

entity subject to suit, we do not predicate our recommendation solely on that ground,

as a <u>Monell</u> claim would be legally cognizable against Koochiching County.  See, <u>De</u>

<u>La Garza v. Kandiyohi County Jail, Correctional Institution</u>, 18 Fed.Appx. 436, 437

(8th Cir., August 30, 2001)("While we agree with the district court's conclusion, see

Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992)('[s]heriff's departments and

police departments are not usually considered legal entities subject to suit'); Marsden

v. Fed. Bureau of Prisons, 856 F. Supp. 832, 836 (S.D.N.Y. 1994)('jail is not an entity

that is amenable to suit'); In re Scott Master Docket, 672 F. Supp. 1152, 1163 n. 1 (D.

Minn. 1987)(sheriff's department is not legal entity subject to suit), aff'd, Myers v.

Scott County, 868 F.2d

1017 (8th Cir. 1989), we modify the dismissal to be without prejudice so that [the

plaintiff] may refile his complaint to name a suable entity or individual * * *.").

Here, it would appear that the sole policy, which would, when charitably

construed in the Plaintiff's favor, attach any liability to Koochiching County, is the

practice of monitoring the booking room.  However, we note that video surveillance

of jails is commonplace for safety reasons, and does not generally encompass any

constitutional or statutory violations.  See generally, <u>Moore v. Novak,</u> 146 F.3d 531

(8th Cir. 1998)(detailing extensive use of video surveillance in jails).   Furthermore,

Koochiching County has implemented safeguards to prevent the monitoring from

presenting any constitutional concerns.   The telephone offered to the Plaintiff, in order

that he could contact an attorney, was not monitored or taped.   See, <u>Mastin Aff.</u>, at

¶5.   Any evidence gathered by a videotape, which might have captured the Plaintiff's

side of a conversation between the Plaintiff and his attorney, was inadmissible, and

was not used for purposes of a criminal Trial.   See, <u>State v. Held</u>, supra at 864 ("We

believe that the [accused]'s rights are safeguarded by a rule which forbids the use in

evidence of any statements made by the defendant to his counsel over the telephone

which are overheard by police."); see also, <u>Commissioner of Public Safety v.</u>

<u>Campbell</u>, 494 N.W.2d 268, 269-70 (Minn. 1992)("[P]olice do not have to provide a

DWI arrestee with a private telephone because the arrestee's rights will be sufficiently

protected by the subsequent exclusion of any overheard statements or any fruits of

those statements").   Therefore, since there has been no proof that a policy, or

custom, that was practiced by either Koochiching County, or its Sheriff's Department,

has deprived the Plaintiff of any of his constitutional rights, we recommend that the

Motion for Summary Judgment by the Sheriff's Department be granted.

       d.   <u>Prosecutorial Immunity</u>.  Hasbargen is also immune from suit for her actions arising from her criminal and civil prosecution of the Plaintiff in her role as a prosecuting attorney.  Under Minnesota law, prosecutors are absolutely immune from civil liability when acting within the scope of their duties in prosecuting criminal charges.  See, <u>Brown v. Dayton Hudson Corp.</u>, 314 N.W.2d 210, 214 (Minn. 1981).  In <u>Brown</u>, the Minnesota Supreme Court adopted the United States Supreme Court's reasoning in <u>Imbler v. Pachtman</u>, 424 U.S. 409, 431 (1976), which held that, "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under §1983."  "The purpose of extending absolute immunity to prosecutors is to prevent the possibility that the risk of having to defend a lawsuit would deter a prosecutor from the fearless and vigorous performance of the prosecutorial function."  <u>S.J.S. by L.S. v. Faribault County</u>, 556 N.W.2d 563, 566 (Minn. App. 1996), rev. denied (Minn., January 21, 1997), citing <u>Brown v. Dayton Hudson Corp.</u>, supra at 213, in turn citing, <u>Imbler v. Pachtman</u>, supra at 427.

       Under the doctrine of prosecutorial immunity, "[e]ven the dishonest or malicious performance of the function is absolutely immune from civil rights claims." <u>Erickson v. County of Clay</u>, 451 N.W.2d 666, 670 (Minn. App. 1990); see also, <u>Willis v. Tarasen</u>, 2005 WL 1270729 *5 (D. Minn., May 6, 2005)("Whether the claim is

based on state common law tort claims, such as malicious prosecution or defamation, or federal civil rights claims, a prosecutor is absolutely immune from civil liability."), citing <u>Brown v. Dayton Hudson Corp.</u>, supra at 213.  In determining whether immunity applies, the focus is on whether the alleged conduct is within the scope of the defendant's prosecutorial duties.  <u>Hyland v. State</u>, 509 N.W.2d 561, 564 (Minn. App. 1993), rev. denied (Minn. February 24, 1994).

Here, the Plaintiff contends that Hasbargen maliciously and vindictively pursued criminal and civil charges against him.  In accordance with the foregoing principles, however, we conclude that Hasbargen is absolutely immune from liability.  See, <u>Thompson v. Walbran</u>, 990 F.2d 403, 404 (8th Cir. 1993), citing <u>Burns v. Reed</u>, 500 U.S. 478, 489 (1991), for the proposition that "prosecutors are 'absolutely immune from damages liability * * * for eliciting false and defamatory testimony from witnesses;'" see also, <u>Myers v. Morris</u>, 810 F.2d 1437, 1446 (8th Cir. 1987) ("[A]llegations that a prosecutor knowingly offered, used or presented false, misleading or perjured testimony at trial * * * do not defeat absolute prosecutorial immunity, regardless of how reprehensible such conduct would be if it occurred."), cert. denied, 484 U.S. 828 (1987).  As the Minnesota Supreme Court has observed, "[t]he discretionary decision whether to charge and whether to continue a prosecution

lies at the very heart of the prosecutorial function." See, <u>Brown v. Dayton Hudson</u> <u>Corp.</u>, supra at 214. Since Hasbargen is immune from prosecution as a matter of law, for approving the criminal and civil Complaints against the Plaintiff, and for prosecuting those Complaints until she dismissed them, we recommend that her Motion for Summary Judgment be granted.

e.    <u>Failure to Establish Constitutional and Statutory Violations</u>. The Plaintiff also alleges a number of constitutional and statutory violations which stem from the communications he expressed, which were videotaped while he was in custody. The Plaintiff's communications were initially made in a telephone call to contact his attorney, and a videotape captured, and recorded, part of that conversation. The phone, itself, was not monitored.

1.    <u>Title 42 U.S.C. §2000aa</u>. The Plaintiff alleges a violation of Title 42 U.S.C. §2000aa, which is the Privacy Protection Act, and which provides, in pertinent part, that "it shall be unlawful for a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize documentary materials, other than work product materials, possessed by a person in connection with a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication." <u>Title</u>

42 U.S.C. §2000aa(b).  The Plaintiff has not alleged in his Complaint,  that any work product or communications were seized by the Defendants, which the Plaintiff intended to disseminate to the public at large by means of a newspaper, book, broadcast, or other similar type of public communication.

As our Court of Appeals has determined, "[t]he [Privacy Protection] Act presents a straightforward statutory scheme for protecting those engaged in information dissemination from government intrusion by prohibiting searches and seizures of documentary materials except where government officials have a reasonable belief that a statutory exception applies."  Citicasters v. McCaskill, 89 F.3d 1350, 1356 (8th Cir. 1996); see also, Berglund v. City of Maplewood, Minnesota, 173 F. Supp.2d 935, 949 (D. Minn. 2001)("[The Privacy Protection] Act generally prohibits government officials from searching for and then seizing work product or documentary materials possessed by a person in connection with a purpose to disseminate information to the public."), aff'd sub nom., Zick v. City of Maplewood, 50 Fed.Appx. 805 (8th Cir., November 21, 2002), cert. denied, 539 U.S. 965 (2003). Here, no work product of the Plaintiff was seized, and the videotape was not the Plaintiff's to distribute to the public.  Therefore, as a matter of law, the Plaintiff has failed to state a claim based upon Section 2000aa.

2.      <u>Title 18 U.S.C. §§2510-2522</u>.   The Plaintiff seeks redress through Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), which is codified as <u>Title 18 U.S.C. §§2510 et. seq.</u>, and which affords a civil remedy to those who have suffered injury because of an illegal resort to electronic surveillance.  See, <u>Title 18 U.S.C. §2520</u>.  Title III prohibits the willful use of any electronic, mechanical, or other surveillance device, to intercept oral communications.  See, <u>Title 18 U.S.C. §2511(1)(b)</u>.  However, any equipment or facility in use by an investigative agency or law enforcement, in the ordinary course of duties, is excepted from the definition of electronic, mechanical, or other surveillance device.  See, <u>Title 18 U.S.C. §2510(5)(a)</u>.  Surveillance devices in a jail setting are common, and are used in the ordinary course of duties to maintain security, and the safety of officers and inmates.  See, e.g., <u>Lanza v. State of New York</u>, 370 U.S. 139, 143 (1962).

Here, the Plaintiff complains about the videotape that recorded the surveillance of the Jail's booking room.  The tape was created in the ordinary course of maintaining the safety and security of the Jail's booking room.  No illegal evidence was obtained, and presented at a criminal Trial, and no conviction was obtained.  Moreover, the sound on the videotape was not connected to the telephone line in the booking room,

as that telephone was not subject to wiretapping.  See, <u>DeMuth Aff.</u>, at ¶8; <u>Mastin Aff.</u>, at ¶¶4 and 5; <u>Nelson Aff.</u>, at ¶¶6 and 7.  Accordingly, as a matter of law, we find no violation of the statute, and recommend that the County Defendants' dispositive Motion be granted as to this claim.

       3.    <u>Privacy Rights Under Minnesota Law</u>.  The Plaintiff appears to claim his expectation of privacy was violated when he was videotaped while in the Koochiching County jail, where he made a telephone call to locate an attorney on the day of his arrest.  The Plaintiff does not appear to connect his privacy interest to any explicit constitutional right, but instead, he appears to base his claim on <u>Minnesota Statutes Section 481.10</u>, which provides, in part:

> [O]fficers or persons having in their custody a person restrained of liberty whether or not the person restrained has been charged, tried, or convicted, shall provide private telephone access to any attorney retained by or on behalf of the person restrained, or whom the restrained person may desire to consult at no charge to the attorney or to the person restrained. Reasonable telephone access under this subdivision shall be provided following the request of the person restrained and before other proceedings shall be had regarding the alleged offense causing custody

<u>Minnesota Statutes Section 481.10, Subdivision 2</u>.

The Minnesota Supreme Court has held that, when a defendant is in custody, any conversations between the accused and his counsel, which are overheard by police

officers, are excluded from evidence.   See, <u>State v. Held</u>, supra at 864.   This evidentiary standard satisfies the privacy requirements of Minnesota Statute Section 481.10.  <u>Id.</u>; <u>Shovein v. Commissioner of Public Safety</u>, 357 N.W.2d 386, 388 (Minn. App. 1984).  Indeed, the Minnesota Courts have determined that, "[i]t is clear from a review of the legislative history of Minn.Stat. §481.10 that the statute currently does not apply to implied consent proceedings," such as that confronting the Plaintiff. <u>Gergen v. Com'r of Public Safety</u>, 548 N.W.2d 307, 311 (Minn.App. 1996), rev. denied (Minn., August 6, 1996); see also, <u>Minnesota Statutes Section 624.7143, Subdivision 1</u> ("A person who carries a pistol in a public place on or about the person's clothes or person is required, subject to the provisions of this section, to take or submit to a test of the person's blood, breath, or urine for the purpose of determining the presence and amount of alcohol or a controlled substance.").  In any event, no statement between the Plaintiff, and his attorney, was used against him in a criminal manner, and therefore, this claim also fails as a matter of law.

                4.    <u>Other Constitutional Violations</u>.  There is no basis for a Fifth Amendment claim since all of the criminal charges, which had been filed by Koochiching County regarding this matter, were dismissed.  Furthermore, other alleged violations of the First, Fourth, Sixth, Ninth, Tenth, and Fourteenth Amendments, or

asserted due process violations, are alleged without any factual basis or predicate, and should, therefore, be dismissed, even without regard to the Plaintiff's lack of standing to prosecute such asserted violations. See, <u>Liggins v. Morris</u>, supra at 971. As we have noted, the criminal and civil charges, which arose from the Plaintiff's arrest on April 7, 2004, have been dismissed, and the Plaintiff is not under any criminal liability for the actions arising from those prior criminal charges. Therefore, these claims should also be dismissed.

f. <u>Retaliation Claims</u>. The Plaintiff claims to have been retaliated against by the Defendants. The only possible basis for his claim, that can be gleaned from the Plaintiff's Complaint, would appear to be the related civil case filed against the Plaintiff, which would potentially have revoked his firearms permit as a result of his criminal charges. However, there is no action to which the Plaintiff alludes that would support any retaliatory act by any of the Defendants. The civil case was pursued in accordance with Minnesota Statutes Sections 624.7142, and 624.7143, Subdivision 2, which authorized the County Prosecutor to file a civil suit to impose a fine and a one-year revocation of a firearms permit, pursuant to a charge of possessing a firearm while under the influence, if the accused refused to undergo a chemical test when arrested. Minnesota Statutes explicitly authorize a civil case under the facts

presented by the Plaintiff's arrest on April 7, 2004. See, <u>DeMuth Aff</u>. The averments of the County Defendants, that they have never harassed or threatened the Plaintiff have gone unrebutted. See, <u>Nelson Aff.</u>, at ¶3; <u>DeMuth Aff.</u>, at ¶2. Therefore, absent any showing of retaliation, this claim should also be dismissed.

        g.     <u>Conspiracy and Prosecution-Related Claims</u>. The Plaintiff alleges that a conspiracy existed between the Defendants so as to deprive him of federally protected rights, but such broad and nonspecific assertions of collusion fail as a matter of law. See, <u>Johnson v. Esry</u>, supra at 37; <u>Manis v. Sterling</u>, supra at 681. Here, the Plaintiff provides no detail as to what the conspiracy involved, its purpose, any acts done in the furtherance of the conspiracy, or what damages resulted from that conspiracy. As a consequence, the Plaintiff's conspiracy allegations fail to meet any test of cognizability, as they are entirely devoid of specificity or factual support. Therefore, the County Defendants' Motion to Dismiss the conspiracy claim should be granted.

As for the allegations of malicious prosecution, such a claim is not actionable under Section 1983, unless there is an underlying violation of a right granted either by Federal Statute, or the Constitution. See, <u>Maine v. Thiboutot</u>, 448 U.S. 1, 4 (1980); <u>Pace v. City of Des Moines</u>, 201 F.3d 1050, 1055 (8th Cir. 2000). To state a claim for

malicious prosecution requires the following:  (1) a suit must be brought without probable cause and with no reasonable ground on which to base a belief that the plaintiff would prevail on the merits; (2) the suit must be instituted and prosecuted with malicious intent; and (3) the suit must ultimately terminate in favor of the defendant. See, Stead-Bowers v. Langley 636 N.W.2d 334, 338 (Minn. App. 2001).  Here, based on the facts presented in the County Defendants' Motion, as well as in their supporting Affidavits, there was objective probable cause to file criminal charges.  In responding to a citizen's complaint, the investigating officers found the Plaintiff in possession of a firearm under circumstances that led investigators to believe that the Plaintiff was under the influence of alcohol, in violation of a State statute, as the statute was interpreted at that time.  Therefore, the Plaintiff's claim fails on the first element of a malicious prosecution action, under the governing State law, and lacks legal merit.

The Plaintiff also alleges vindictive prosecution.  A charge of vindictive prosecution requires a plaintiff to prove that:  (1) people similarly situated to him were not prosecuted; and (2) the decision to prosecute was motivated by a discriminatory purpose.  United States v. Hirsch , 360 F.3d 860, 864 (8th Cir. 2004).  The Plaintiff has not demonstrated any factual basis to satisfy either prong, and therefore, the claim is also without merit.

h.    Monell Claim Against Koochiching County.  It is well settled that, under Monell v. Department of Social Services, supra at 691, a municipality "cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under §1983 on a respondeat superior theory." [Emphasis in original]; see also, Armstrong v. Mille Lacs County Sheriff's Department, 228 F. Supp.2d 972, 983 (D. Minn. 2002), aff'd, 63 Fed.Appx. 970 (8th Cir., May 27, 2003).  Of course, a County may be held liable, under Section 1983, if the execution of its policy, or custom, resulted in a deprivation of a constitutional right. Id., citing Monell v. Department of Social Servs., at 694; see also, McMillian v. Monroe County, 520 U.S. 781, 783 (1997)(determining that a County is liable, under Section 1983, for the actions of its Sheriff, which constitute County policy); Yellow Horse v. Pennington County, 225 F.3d 923, 928 (8th Cir. 2000)("[A] municipality may only be held liable for constitutional violations which result from a policy or custom of the municipality"); McGautha v. Jackson County, 36 F.3d 53, 56 (8th Cir. 1994)("Respondeat superior does not apply under section 1983 because municipal liability is limited to conduct for which the municipality is itself actually responsible.").

Here, it would appear, after the Plaintiff's Complaint is charitably construed, that the sole policy of the County, which the Plaintiff challenges, is the practice of

- 49 -

monitoring the booking room.  As previously detailed, video surveillance of jails is commonplace for safety, and jail security, and does not generally encompass any constitutional or statutory violations.  See generally, <u>Moore v. Novak,</u> 146 F.3d 531 (8th Cir. 1998)(detailing extensive use of video surveillance in jails).  As the policy of monitoring a jailhouse through video surveillance, as alleged, does not present any activity rising to a constitutional violation, any claims by Plaintiff against the municipality of Koochiching County should be dismissed.

        i.    <u>Qualified Immunity of Individual Municipal Defendants</u>.

"Under the doctrine of qualified immunity, state actors are protected from civil liability when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Lawyer v. City of Council Bluffs</u>, 361 F.3d 1099, 1102 (8th Cir. 2004), quoting <u>Sexton v. Martin</u>, 210 F.3d 905, 909 (8th Cir. 2000), quoting, in turn, <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). "To survive summary judgment based on the affirmative defense of qualified immunity, a claimant must '(1) assert a violation of a constitutional right;[8] (2) demonstrate that

---

[8]We address the issue of qualified immunity in the interests of completeness, as we find no constitutional violations in the first instance.  If we err in that respect, we nonetheless conclude that the County Defendants possess qualified immunity for

(continued...)

the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated plaintiff's clearly established right.'" <u>Gatlin ex rel. Gatlin v. Green</u>, 362 F.3d 1089, 1093 (8th Cir. 2004), quoting <u>Omni Behavioral Health v. Miller</u>, 285 F.3d 646, 651, quoting, in turn, <u>Habiger v. City of Fargo</u>, 80 F.3d 289, 295 (8th Cir. 1996); see also, <u>Lawyer v. Kernodle</u>, 721 F.2d 632, 635 (8th Cir. 1983).  For a right to be considered clearly established, the "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987).

In <u>Lawyer v. Kernodle</u>, supra, the plaintiff alleged that the defendant, who performed an autopsy on the plaintiff's wife, negligently diagnosed the cause of his wife's death.  The plaintiff was eventually charged with second degree murder in his wife's death, but the charges were later dropped.  Our Court of Appeals found that the coroner, in performing an autopsy, was exercising his professional judgment and discretion.  See, <u>Lawyer v. Kernodle</u>, supra at 635.  The Court then noted that "[i]t has generally been held that coroners enjoy a qualified immunity when performing their

_____

[8](...continued)
reasons we detail in the text of this section of the Report.

official functions for the state." Id.  The Court further noted that "'[p]rosecutors and their assistants also enjoy immunity from Section 1983 actions so long as the actions complained of appear to be within the scope of their prosecutorial duties,'" and that "'[t]his immunity is equally available to investigators for the state prosecutors for actions in connection with a criminal prosecution.'" Id., quoting Keating v. Martin, 638 F.2d 1121, 1122 (8th Cir. 1980).

The rationale of Lawyer v. Kernodle applies with equal force to the County Defendants in this action, all of whom were investigating the circumstances surrounding the Plaintiff's possession of a firearm in their official capacities. The Plaintiff does not set forth any evidence that any of the Defendants engaged in activity that was not within their official capacities, although the Plaintiff did name all of the individual Defendants in both their official and personal capacities.

While the Plaintiff alleges various constitutional injuries, albeit in a conclusory fashion that is lacking in a factual basis, the Plaintiff has failed to set forth any evidence which demonstrates that the Defendants knew that their alleged conduct -- the act of monitoring the booking of the Plaintiff while he was contacting an attorney, or when waiting an adequate time before determining that the Plaintiff had refused to take a

chemical test -- would violate the Plaintiff's constitutional rights.   Clearly, on the

Record presented, the County Defendants are entitled to qualified immunity.

> j.      Official Immunity of DeMuth, Mastin, Nelson, and Wherley.

The County Defendants maintain that the Plaintiff's tort claims should be dismissed,

based upon their official and vicarious official immunity.[9]   In Minnesota, governmental

employees are entitled to immunity when they are performing discretionary functions.

See, e.g, Kuha v. City of Minnetonka, 176 F. Supp.2d 926, 934 (D. Minn.

2001)(applying Minnesota law); Janklow v. Minnesota Board of Examiners, 552

N.W.2d 711, 715-16 (Minn. 1996).   As government employees, they are "accorded

near complete immunity for their actions in the course of their official duties, so long

as they do not exceed the discretion granted them by law."  Janklow v. Minnesota Bd.

of Examiners, supra at 716.   Such official immunity is "intended 'to protect public

officials from the fear of personal liability that might deter independent action.'"

---

[9]Since we find no viable Federal claim, we would also recommend a dismissal of any State law action the Plaintiff has alleged by declining supplemental jurisdiction over those claims.  See, Title 28 U.S.C. §1367; see also, Porter v. Williams, --- F.3d ---, 2006 WL 265511 at *2 (8th Cir., February 6, 2006)(recognizing that, under Title 28 U.S.C. §1367(c)(3), the Court has the discretion to retain, or remand, State law claims when Federal jurisdiction is absent, and the remand can be sua sponte).

Dokman v. County of Hennepin, 637 N.W.2d 286, 296 (Minn.App. 2001), rev. denied (Minn., February 28, 2002).  Generally, police officers are discretionary officials.  Id.

As a result, the heart of our analysis, under a claim of official immunity, is the nature of the governmental action; that is, was the act discretionary or ministerial.  "[I]n analyzing any immunity question it is essential to identify the precise govern-mental conduct at issue."  Watson v. Metropolitan Transit Commission, 553 N.W.2d 406, 415 (Minn. 1996).  Discretionary decisions are those which involve the exercise of judgment or discretion.  See, Johnson v. Morris, 453 N.W.2d 31, 41 (Minn. 1990); Mowatt v. Hennepin County, 2002 WL 857733 at *4 (Minn.App., May 7, 2002) (stating that discretionary acts are those that involve "the exercise of individual judgment in carrying out official duties")[unpublished decision].   In contrast, ministerial decisions, which are the types of decisions that are absolute, certain, and imperative, and involve merely the execution of a specific duty which arises from fixed and designated facts, see Rico v. State, 472 N.W.2d 100, 107 (Minn. 1991), are not immune to suit.  "Some degree of judgment and discretion will not necessarily confer discretionary immunity on an official; the crucial focus is upon the nature of the act."  Elwood v. County of Rice, 423 N.W.2d 671, 677 (Minn. 1988).

The categorization of an act as discretionary or ministerial is a legal question, which the Court determines.  See, Kelly v. City of Minneapolis, 598 N.W.2d 657, 664 (Minn. 1999).  "In making this determination the Court [should] keep[] in mind that official immunity, 'protects public officials from the fear of personal liability that might deter independent action and impair the effective performance of their duties.'"  Kuha v. City of Minnetonka, supra at 934, quoting Elwood v. County of Rice, supra at 677. "Only when officials act outside the scope of their charged authority can they be deemed to have waived this immunity and be held personally liable for their negligence."  Watson v. Metropolitan Transit Commission, supra at 415.  The burden of proving immunity is on the defendant.  Engele v. Indep. Sch. Dist. No. 91, 846 F. Supp. 760, 768 (D. Minn. 1994); Rehn v. Fischley, 557 N.W.2d 328, 333 (Minn. 1997).

Here, DeMuth, Nelson, and Wherely, who are all police officers, participated in activities that were largely discretionary.  DeMuth was dispatched to a location where gunshots were heard, and he found a firearm, and a man asleep in a car, who smelled of alcohol.  Based on a field test, DeMuth exercised his discretion to arrest the Plaintiff.  Wherley exercised discretion in the manner in which he served process in a civil case.  Nelson and Mastin exercised discretion in investigating the Plaintiff's

complaints, concerning the inventory of his car.  The Plaintiff does not challenge the discretionary manner in which these activities were carried out.   Therefore, any possible State tort claims, including invasion of privacy, intentional infliction of emotional distress, and false arrest, are not available as actions against those named Defendants.

> k.    Claims Against Iverson Reuvers LLC, Susan Tindal, and Paul Revers.

Generally, "an attorney acting within the scope of [her] employment as an attorney is immune from liability to third persons arising out of that professional relationship."  McDonald v. Stewart, 182 N.W.2d 437, 440 (Minn. 1970). The exceptions to this exemption are implicated when that attorney commits an intentional tort, or acts in a fraudulent or malicious manner.  See, Melrose Floor Co. v. Lechner, 435 N.W.2d 90, 91 (Minn.App. 1989).

Here, the Plaintiff has named attorneys Susan Tindal ("Tindal"), and Paul Reuvers ("Reuvers"), and their law firm, Iverson Reuvers LLC, as Defendants.  The only apparent connection, which these Defendants have to Plaintiff, as particularized in the Plaintiff's Complaint, is their involvement in Court proceedings that were commenced by the Plaintiff.  Tindal represents Koochiching County in her course of

employment as an attorney.  See, <u>Memorandum of Law in Support of Motion for Summary Judgment</u>, <u>Docket No. 44</u>, at 37.  Her supervisor, Reuvers, and her law firm, Iverson Reuvers LLC, have had no other direct interaction with the Plaintiff.  The Plaintiff appears to allege that Tindal, and through vicarious liability, her supervisor and law firm, have engaged in a fraud upon the Court, and have "defamed" his reputation in defending Koochiching County in Court proceedings. See, <u>Complaint</u>, at ¶¶68, 70, 73, and 76.

All of Tindal's actions have been undertaken in connection with her representation of Koochiching County, and the Plaintiff has not specifically demonstrated any improper filings, or false statements, which were made by Tindal, other than his nonspecific and conclusory assertions.  See, <u>Complaint</u>, at ¶¶70, 76. Therefore, without a specific factual claim of defamation, and with recognition that all of Tindal's actions have been undertaken in connection with her role as an attorney in Court proceedings, we find that Tindal, Reuvers, and Iverson Reuvers LLC, are clothed with immunity for her statements and filings in this, and other prior cases.

C.     Biggins's Motion on the Pleadings in his Capacity as a Public Defender.

1.     Standard of Review.   Rule 12(c), Federal Rules of Civil Procedure, allows parties to move for a Judgment on the pleadings, "[a]fter the pleadings are closed, but within such time as not to delay the trial."   The standard, upon which Rule 12(c) Motions are decided, is akin to that of a Motion to Dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure.   See, Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990)("[W]e review this 12(c) motion under the standard that governs 12(b)(6) motions."), citing St. Paul Ramsey County Med. Ctr. V. Pennington County, 857 F.2d 1185, 1187 (8th Cir. 1988); see also, Flora v. Firepond, Inc., 260 F. Supp.2d 780, 784 (D. Minn. 2003), aff'd, 383 F.3d 745 (8th Cir. 2004).   Thus, a "[j]udgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law."   Faibisch v. University of Minnesota, 304 F.3d 797, 803 (8th Cir. 2004), citing United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000).   A disputed fact is "material," if it must inevitably be resolved, and that resolution will determine the outcome of the case.   See, Anderson v. Liberty Lobby, Inc., supra at 248; Jenkins v. Southern Farm Bureau Casualty, 307 F.3d 741, 744 (8th Cir. 2002)("A fact is material

if its determination in favor of the non-moving party could affect the result in the case."); Herring v. Canada Life Assurance, 207 F.3d 1026 (8th Cir. 2000).

When making such determinations, "[w]e accept as true, all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." Syverson v. Firepond, Inc., 383 F.3d 745, 749 (8th Cir. 2004), quoting United States v. Any & All Radio Station Transmission Equip., supra at 462. However, we need not accept as true, wholly conclusory allegations, or unwarranted factual inferences. See, Hanten v. School Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999); Springdale Educ. Ass'n v. Springdale School Dist., 133 F.3d 649, 651 (8th Cir. 1998). Moreover, in treating the factual allegations of a Complaint as true, the Court "do[es] not, however, blindly accept the legal conclusions drawn by the pleader from the facts." Westcott v. City of Omaha, supra at 1488, citing Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987).   A Motion for Judgment on the pleadings can be converted to a Rule 56 Motion for Summary Judgment, if "matters outside the pleadings are presented to and not excluded by the court." Rule 12(c), Federal Rules of Civil Procedure. However, a Court may consider some information, which is not contained within the Complaint, such as materials that are part of the public record, and materials that are necessarily embraced

by the pleadings, without transforming the Motion into one for Summary Judgment.

Porous Media Corp. v. Pall Corp., supra at 1079, see Faibisch v. University of

Minnesota, supra at 802, Flora v. Firepond, Inc., supra at 784-785.   Materials

necessarily embraced by the pleadings include "documents whose contents are alleged

in the complaint, and whose authenticity nobody questions, but which are not

physically attached to the pleading."  Fraenkel v. Messerli & Kramer, P.A., 2004 WL

1765309 at *2 (D. Minn., July 29, 2004), quoting Kushner v. Beverly Enters., 317 F.3d

820, 831 (8th Cir. 2003), see also, Jenisio v. Ozark Airlines, Inc., Ret. Plans, 187 F.3d

970, 972 n.3 (8th Cir. 1999)("A district court may consider documents on a motion to

dismiss where * * * the plaintiff's claims are based solely on the interpretation of the

documents and the parties do not dispute the actual contents of the documents.").

      2.    Legal Analysis.  State public defenders are immune from suit for

legal malpractice under Minnesota tort law.  Dzubiak v. Mott, 503 N.W.2d 771, 773

(Minn. 1993).   Here, the Plaintiff contends that Biggins failed to "file timely motions

during that time and where he displayed knowledge of that duty on July 12, 2004."

Complaint, at ¶131.   On that date, Biggins was defending Erickson as a Public

Defender.  See, Biggins Answer, Docket No. 10, at ¶9  Therefore, any actions, that

Biggins took in the course of defending the Plaintiff, subsequent to his appointment

as the Plaintiff's Public Defender -- namely, the filing of Motions – such as would give rise to a claim of legal malpractice, are immune from liability.

However, the immunity of public defenders does not extend to causes of action which allege intentional violations of federally protected civil rights under Title 42 U.S.C. §1983.  See, Tower v. Glover, 467 U.S. 914, 923 (1984).  In order to state a Federal civil rights claim against a public defender, a plaintiff must show that, under Section 1983, the defendant  acted "under the color of state law."  See, Chapman v. Musich, 726 F.2d 405, 407 (8th Cir. 1984), cert. denied., 469 U.S. 931 (1984).  A public defender does not act under color of State law in the course of providing traditional functions, such as serving as counsel to a criminal defendant.  See, Polk County v. Dodson, 454 U.S. 312, 318-325 (1981).  Here, as was the case with LeDuc, the conspiracy allegations, which are alleged against Biggins, are entirely devoid of specificity or factual support, and therefore, they must fail as a matter of law.  See, Johnson v. Esry, supra at *1; Manis v. Sterling, supra at 681.  Accordingly, we recommend that Biggins' Motion to Dismiss on the Pleadings, as a State Public Defender, be granted.

D.    Bruce Biggins' Motion on the Pleadings in his Individual Capacity.

1.    Standard of Review.   A party may challenge a Court's subject matter jurisdiction at any time, under Rule 12(b)(1), Federal Rules of Civil Procedure, since such a defense may not be waived.  See, Moubry v. Independent School District No. 696, 951 F. Supp. 867, 882 (D. Minn. 1996), citing Northwest Airlines, Inc. v. Transport Workers, 451 U.S. 77, 95 (1981); Bueford v. Resolution Trust Corp., 991 F.2d 481, 485 (8th Cir. 1993)("Lack of subject matter jurisdiction * * * cannot be waived[;] [it] may be raised at any time by a party to an action, or by the court sua sponte.").  "In order to properly dismiss an action under Rule 12(b)(1), the challenging party must successfully attack the Complaint, either upon its face or upon the factual truthfulness of its averments."  Moubry v. Independent School Dist. No. 696, supra at 882, citing Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); Osborn v. United States, 918 F.2d 724, 729 n. 6 (8th Cir. 1990).

If the defendant brings a facial challenge -- a challenge that, even if truthful, the facts alleged in a Complaint are insufficient to establish jurisdiction -- the Court reviews the pleadings alone, and "the non-moving party [is afforded] the same protections that it would receive under a Rule 12(b)(6) motion to dismiss."  Carlson Holdings, Inc. v. NAFCO Ins. Co., 205 F. Supp.2d 1069, 1073 (D. Minn. 2001),

citing Titus v. Sullivan, supra at 593; Osborn v. United States, supra at 729 n. 6.

Accordingly, "[t]he court presumes that all of the factual allegations in the complaint

concerning jurisdiction are true and will not dismiss the claims unless the plaintiff fails

to allege an essential element for subject matter jurisdiction." Id.

However, in factual challenges to subject matter jurisdiction -- contending that

the allegations in the Complaint, that are to establish jurisdiction, are insufficiently

supported by the facts -- the Court "may consider matters outside the pleadings and

the non-moving party does not benefit from the safeguards of 12(b)(6)." Id.  When

a plaintiff's "'allegations of jurisdictional facts are challenged by his adversary in any

appropriate manner, he must support them by competent proof," "[a]nd * * * for that

purpose the court may demand that the party alleging jurisdiction justify his allegations

by a preponderance of the evidence.'"  Zunamon v. Brown, 418 F.2d 883, 886 (8th

Cir. 1969), quoting McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189

(1936).

2.    Legal Analysis.  Here, Biggins has filed a Motion for Judgment on

the Pleadings in his individual capacity, and asserts that this Court lacks subject matter

jurisdiction over the Plaintiff's claims against him.  In his Complaint, the Plaintiff has

alleged that Biggins, who was his former attorney, is "[a] proper party for involvement

and breach of duty and breach of contract," and that the Plaintiff seeks "restitution for moneys paid."  See, <u>Complaint,</u> at ¶¶22, 131.  The Plaintiff has also claimed that Biggins committed legal malpractice "for failure to seek immediate dismissal in April of 2004 when he was purported to be on the case, a sum of damages as may be determined by the jury."  <u>Id.</u> at ¶131.

We find that, given the facts, and the legal theories asserted by the Plaintiff in his Complaint, we do not possess original subject matter jurisdiction over his Claims against Biggins, in Biggins' individual capacity.

At the outset, we recognize that all of the Plaintiff's claims -- legal malpractice, breach of fiduciary duty, and breach of contract  -- are based strictly on the laws of the State of Minnesota, and do not present any Federal questions.  See, <u>Title 28 U.S.C. Section 1331</u>; <u>Schepers v. County of Hennepin</u>, 70 Fed.Appx. 911 (8th Cir. 2003)(affirming lower court's dismissal of legal malpractice claims for lack of subject matter jurisdiction); <u>Ryther v. KARE 11</u>, 976 F. Supp. 853, 855 (D. Minn. 1997) (finding lack of subject matter jurisdiction where a former client claimed breach of contract and fiduciary duty against his attorney in a non-diverse action).

Furthermore, the Plaintiff does not appear to argue, anywhere in his Complaint, that his claims against Biggins, or anyone else, are founded upon a diversity of

citizenship.  Title 28 U.S.C. Section 1332 provides, in pertinent part, that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between * * * citizens of different States."  It appears, from the Record, as if Biggins is a "citizen" of Minnesota, for diversity purposes.  See, <u>Answer</u>, at ¶37.  While the Plaintiff is currently residing in Minnesota, he alleges, in various documents filed with this Court -- including in his Complaint -- that he is a resident of Michigan.  For these purposes, we will assume, without deciding, that the Plaintiff's allegation as to his citizenship is correct.

Nevertheless, jurisdiction based on diversity of citizenship also requires that the amount in controversy exceed $75,000.00.  See, <u>Title 28 U.S.C. §1332</u>.  "The party asserting jurisdiction has the burden of showing that the amount in controversy exceeds the jurisdictional amount."  <u>Al-Cast Mold & Pattern, Inc. v. Perception, Inc.</u>, 52 F. Supp.2d 1081, 1082 (D. Minn. 1999), citing <u>Hatridge v. Aetna Cas. & Sur. Co.</u>, 415 F.2d 809, 814 (8th Cir. 1969).  Our Court of Appeals has noted that a Complaint should be dismissed if it "appears to a legal certainty that the claim is really less than for the jurisdictional amount."  See, <u>Kopp v. Kopp</u>, 280 F.3d 883, 884 (8th Cir. 2002), quoting <u>Larkin v. Brown</u>, 41 F.3d 387, 388 (8th Cir. 1994), in turn, quoting <u>St. Paul</u>

<u>Mercury Indem. Co. v. Red Cab Co.</u>, 303 U.S. 283, 289 (1938).  Stated differently, "[t]he district court has subject matter jurisdiction in a diversity case when a fact finder could legally conclude, from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000."  <u>Id.</u> at 885.

The Plaintiff's Complaint makes no express claim for damages against Biggins, other than a vague statement asking for "restitution of moneys paid," and "a sum of damages as may be determined by the jury."  See, <u>Complaint</u>, at ¶131.   We conclude that the amount in controversy, in the cause of actions asserted against Biggins, does not independently meet the statutorily required amount for jurisdiction based upon diversity of citizenship.

It would appear, from the documents submitted by both parties on the Record, that the Plaintiff paid Biggins $350.00 for the services that Biggins did perform on the Plaintiff's behalf.  See,  <u>Plaintiff's Exhibit No. 3</u>, <u>Docket No. 23; Plaintiff's Exhibit No.17</u>, <u>Docket No. 71</u>; <u>Biggins Answer</u>, at ¶9.  We further note that the Plaintiff's criminal charges were dismissed, as the provision, under which the Plaintiff was charged -- <u>Minnesota Statutes Section 624.714</u> -- was adjudicated to be unconstitutional under the Minnesota Constitution.  See, <u>Answer</u>, at ¶9; see also <u>Unity Church of St. Paul v. State</u>, 2004 WL 1630505 (Minn. Dist. Ct. July 14, 2004), aff'd,

694 N.W.2d 585 (Minn.App. 2005), review dismissed (Minn., June 9, 2005) (finding that the applicable Minnesota Statute violated the Minnesota Constitution's requirement of a single-subject in enacted legislation).   Therefore, given that the criminal charges against the Plaintiff were ultimately dismissed, and in view of the fact that the Plaintiff was never convicted on those charges, we are hard-pressed to ascertain any logical award of damages that flowed out of Biggins' representation of the Plaintiff under a legal malpractice theory.

To prevail in a claim for legal malpractice under Minnesota law, a plaintiff must prove: (1) the existence of an attorney-client relationship; (2) acts amounting to negligence or breach of contract; (3) that such acts were the proximate cause of the plaintiff's damages; and (4) that but for defendant's conduct, the plaintiff would have been successful in the action. See, Rouse v. Dunkley & Bennett, P.A., 520 N.W.2d 406, 408 (Minn. 1994), citing Blue Water Corp. v. O'Toole, 336 N.W.2d 279, 281 (Minn. 1983).  Failure to prove any one (1) of these elements is fatal to a plaintiff's claim of legal malpractice.  See, id., citing Blue Water Corp. v. O'Toole, supra at 282. Here, the Plaintiff was ultimately successful in avoiding any criminal liability, as the charges facing him were dismissed, and accordingly, no damages were available to the Plaintiff based upon Biggins' legal representation, in Biggins' individual capacity.

Furthermore, if we construe the Plaintiff's Complaint, under a breach of contract theory, as challenging the withdrawal of Biggins from his personal representation of the Plaintiff, we are also without jurisdiction to entertain such a claim. As established by the Rooker/ Feldman doctrine, Federal Courts do not possess subject matter jurisdiction over challenges to State Court decisions in judicial proceedings.  See, Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); see also, Exxon Mobil Corp. v. Saudi Basic Industries Corp., 125 S. Ct. 1517, 1521-24 (2005); Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000); Bechtold v. City of Rosemount, 104 F.3d 1062, 1065 (8th Cir. 1997).

With minor exceptions, which do not apply here, the Federal review of a State Court determination may only be obtained in the United States Supreme Court.  See, District of Columbia Court of Appeals v. Feldman, supra at 476, citing Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 296 (1970); Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995); see also, Title 28 U.S.C. §1257.  The Supreme Court, in Feldman, formulated a general rule which distinguishes general constitutional challenges to State laws and regulations -- over which the Federal Courts have jurisdiction -- from requests for review of specific State

- 68 -

Court decisions, over which they have no jurisdiction.  As explained by the Court, when the Federal claims are "inextricably intertwined with" State Court "decisions, in judicial proceedings," they fall outside of the Federal Court's jurisdiction.  District of Columbia Court of Appeals v. Feldman, supra at 486-87.

Under this test, a Federal Court lacks subject matter jurisdiction, "if the relief requested in the federal action would effectively reverse the state court decision or void its ruling."  Charchenko v. City of Stillwater, supra at 983; see also, Bechtold v. City of Rosemount, supra at 1065.  Stated otherwise, "[w]here federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment."  Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987)(Marshall, J., concurring).

Within this Circuit, even when a litigant has not had a fair opportunity to litigate a claim in the prior State Court proceeding, the Rooker/Feldman jurisdictional bar still applies, so long as the merits of the Federal action are "inextricably inter-twined" with the State Court decision.  See, In re Goetzman, 91 F.3d 1173, 1178 (8th Cir. 1996), cert. denied sub nom., Goetzman v. Agribank, FCB, 519 U.S. 1042 (1996); Postma v. First Federal Savings & Loan, 74 F.3d 160, 162 (8th Cir. 1996); but see, Centifanti

v. Nix, 865 F.2d 1422, 1433 (3rd Cir. 1989)(failure to raise constitutional claims in State

Supreme Court does not bar District Court from hearing those claims when plaintiff

did not have "realistic opportunity to fully and fairly litigate" claims in state court);

Raddatz v. Beaubien, 880 F. Supp. 500, 503 (E.D. Mich. 1995) ("[T]here is an

exception to the Rooker/Feldman doctrine in cases where the state court judgment is

alleged to have been procured through fraud, deception, accident, or mistake.").

Here, any challenge made by the Plaintiff to the propriety of the Order, which

authorized Biggins to withdraw from his representation, should have been made under

the appellate review available in the Minnesota State Court system and, ultimately, to

the United States Supreme Court.  As this Court lacks subject matter jurisdiction to

overturn the Order of a State Court, which granted Biggins' Motion to Withdraw, we

are without subject matter jurisdiction to consider those claims further.  See, District

of Columbia Court of Appeals v. Feldman, supra at 486-87.

As a result, the only amount in controversy, that the Plaintiff has alleged in his

Complaint, that we could even potentially entertain under jurisdiction based upon the

diversity of parties, would be the $350.00 the Plaintiff allegedly paid to Biggins.  Since

this amount falls well short of the $75,000.00 requirement of Title 28 U.S.C. §1332,

we find that we are without subject matter jurisdiction over the Plaintiff's state law

claims against Biggins.  The Plaintiff's State law claims against Biggins should not be dismissed with prejudice, however, as he may seek to litigate those claims in State Court and, since we do not have jurisdiction to entertain them here, any dismissal should be without prejudice.

NOW, THEREFORE, It is --

RECOMMENDED:

1.     The Motion to Dismiss [Docket No. 14] by LeDuc be granted.

2.     The Motion for Judgment on the Pleadings  [Docket No. 29] by Biggins in his capacity as a Public Defender be granted.

3.     The Motion for Judgment on the Pleadings  [Docket No. 33] by  Biggins, in his individual capacity, be granted for lack of subject matter jurisdiction.

4.     The Motion by the County Defendants to Dismiss, or in the Alternative, for Summary Judgment  [Docket No. 42] be granted.


Dated:  February 13, 2006            s/Raymond L. Erickson

                                     Raymond L. Erickson
                                     CHIEF U.S. MAGISTRATE JUDGE


**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than March 2, 2006,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing  **by no later than March 2, 2006,** unless all interested

parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.